UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL EUGENE STEWARD,<br><br>Defendant. | Case No. 1:95-CR-05111-JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SENTENCE MODIFICATION PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. 632) |

Michael Eugene Steward moves the Court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 632). Steward has now served more than 27 years in prison for a string of armed robberies in 1994. He moves for a sentence reduction based on evidence of his rehabilitation and changes in federal law that shortened the mandatory minimum sentences for his crimes. The government opposes the motion, (Doc. 640), and Steward has filed a reply. (Doc. 642.) For the reasons explained below, Steward's motion is **GRANTED**.

**BACKGROUND**

A string of armed robberies occurred in 1994 in restaurants and hotels in and around Fresno, California, where defendant Michael Steward was on a football scholarship at Fresno State University for the 1993–1994 school year. Seven men were convicted for these robberies, including Steward; five pled guilty, while Steward and one other co-defendant went to trial. Steward was convicted of three counts of interference with interstate commerce by robbery

(Hobbs Act robbery) in violation of 18 U.S.C. § 1951(a), as well as three counts of use of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1).

Judge Oliver W. Wanger sentenced Steward to the statutory minimum sentence applicable at the time for each crime committed: 57 months for each of the three robbery counts (to be served concurrently), followed by 60 months for the first count of use of a firearm and 240 months for each of the other counts of use of a firearm (to be served consecutively as required by § 924(c)(1)). (Doc. 256.) Steward's total sentence was therefore 597 months in prison followed by 36 months of supervised release—nearly 50 years in prison without the possibility of parole.

During sentencing, Judge Wanger expressed frustration that the Court did not have the discretion to depart downward from the required minimums. He noted that if the Court had such discretion, it would have sentenced Steward to only 357 months (29.75 years), departing downward based on Steward's youth, insignificant prior criminal record, and productive life as a college student. Judge Wanger noted that the lower sentence would "constitute fitting punishment," deter others from committing similar crimes, and provide rehabilitation opportunities. *United States v. Harris*, 154 F.3d 1082, 1083 (9th Cir. 1998); (*see also* Doc. 616 at 39, Exhibit C.)

The Ninth Circuit affirmed Steward's conviction and sentence in two separate opinions. *Harris*, 154 F.3d at 1085 (affirming 597-month sentence but commenting, "[w]e do not believe that Harris needs to be in prison when he is 100, or Steward when he is 70"); *United States v. Harris*, 163 F.3d 608 (9th Cir. 1998) (affirming conviction). Steward has since filed several motions for post-conviction relief, which have been denied. (Docs. 425, 526, 572, 573, 604, 609.)

Steward is currently located at U.S. Bureau of Prisons' ("BOP") Safford FCI, a low security correctional institution. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May 20, 2022).[1] To date, Harris has served approximately 27 years of his sentence and has an anticipated release date in 2038.

---

[1] BOP records for Steward are in the name of "Michael Stewart", as originally charged, prior to a true name finding. *See* bop.gov/inmateloc/; Doc. 640 at 4.

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018 ("the FSA") imprisoned defendants may bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).

The policy statement with respect to compassionate release in the U.S. Sentencing

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

3

Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13;[3] *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In the past, when moving for relief under 18 U.S.C. § 3582(c), courts recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Mathews*, No. 2:15-CR-00118-KJM, 2021 WL 3883735, at *3 (E.D. Cal. Aug. 31, 2021); *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

To evaluate a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), a court must consider three requirements:

---

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.    Administrative Exhaustion**

Section 3582(c)(1) permits a defendant to apply to a federal district court for sentence modification only "after the defendant has fully exhausted all administrative rights to appeal the failure of the BOP to bring a motion . . . or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). The parties agree that Steward has satisfied the administrative-exhaustion requirement. (Doc. 640 at 4.) The Court will therefore address the merits of Steward's motion.

**B.    Extraordinary and Compelling Reasons**

When the Ninth Circuit affirmed Steward's sentence, it published its decision specifically to "urge Congress to reconsider its scheme of mandatory consecutive minimum sentences and to grant district court judges the discretion to set sentences at the level appropriate for the circumstances of a particular defendant and his or her crimes." *Harris*, 153 F.3d at 1083. In 2018, Congress heeded this call for reform by passing the First Step Act, which significantly altered the sentencing scheme applicable to § 924(c) violations. Steward now argues that the change to § 924(c) sentencing law has created an extraordinary and compelling sentencing disparity that warrants relief. (Doc. 632 at 45–60.)

Prior to the FSA, prosecutors could "stack" multiple counts of § 924(c) firearms

violations, which resulted in defendants without previous weapons convictions being charged for both a first offense—carrying a five-year mandatory minimum—and a "second or subsequent offense"—carrying a mandatory twenty- or twenty-five-year sentence, to be served consecutively—in the same indictment. *United States v. Jones*, 482 F. Supp. 3d 969, 978 (N.D. Cal. 2020) (citing *Deal v. United States*, 508 U.S. 129, 132 (1993)). As such, someone convicted of two § 924(c) counts in a single offense automatically faced a minimum sentence of 25–30 years.

Section 403(a) of the FSA eliminated this practice by requiring the higher penalty only where a defendant is convicted of a § 924(c) violation after a previous § 924(c) conviction has become final. First Step Act, Pub. L. No. 115-391, Title IV, § 403, 132 Stat. 5221–22 (2018). The First Step Act now only requires mandatory consecutive sentences of 5–7 years for each § 924(c) count in the same indictment, with the two-year enhancement applicable to defendants who brandish their weapons. *Id*. Therefore, if Steward were sentenced today for his conduct, his sentence would likely be 30 years fewer than the 597 months he is currently serving. Steward asks the Court to find that the immense disparity between these sentences is an extraordinary and compelling reason for sentence modification under § 3582.

The government contests that the sentencing disparity caused by the FSA cannot justify relief because Congress did not make § 403's changes retroactive. (Doc. 640 at 5–8.) There is a split of authority on this question. Some courts express concern that granting a motion for sentence reduction under § 3582(c)(1)(A) based on changes to § 924(c) would "supplant the retroactivity determination of courts . . . for the retroactivity determination of Congress." *United States v. Andrews*, 480 F.Supp.3d 669 (E.D. Pa. 2020); *accord*, *e.g.*, *United States v. Fulcher*, No. 98-0119, 2020 WL 4547970, *2 (S.D. Ind. Aug. 5, 2020) ("If Congress intended to authorize courts to exercise discretion to apply [the First Step Act] retroactively to otherwise ineligible defendants, it would have included that amendment . . . [The defendant] may not use 18 U.S.C. § 3582(c)(1)(A)(i)'s 'extraordinary and compelling' provision as an end-around to achieve a result that Congress did not intend.")

///

Other courts, including many in California and in this district, have rejected this reasoning on the grounds that a statute's lack of retroactivity "does not prohibit the court from considering [] legislative change in deciding whether to reduce [a defendant's] sentence." *United States v. Parker*, No. 2:97-cr-202-TLN-EFP, 2021 WL 1966409 at *3 (E.D. Cal. May 17, 2021) (citing cases); *see also United States v. Smith*, 538 F.Supp.3d 990, 1000 (E.D. Cal. 2021). As the Fourth Circuit explained in *United States v. McCoy*, "there is a significant difference between automatic vacatur and resentencing of an entire class of sentences—with its 'avalanche of applications and inevitable resentencings'—and allowing for the provision of individual relief in the most grievous cases." 981 F.3d 271, 286–87 (4th Cir. 2020) (quoting *United States v. Haynes*, 456 F. Supp. 3d 496, 516 (E.D.N.Y. 2020)). "[T]he very purpose of § 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief but 'extraordinary and compelling reasons' nevertheless justify a reduction." *Id*. at 287 (emphasis in original). The undersigned is persuaded by this reasoning and joins those other district courts in finding that the enactment of the First Step Act and its elimination of "stacked" sentences for multiple § 924(c) charges may constitute an extraordinary and compelling reason that weighs in favor of compassionate release in some particular cases—including this one.

Steward was only 21 years old at the time of the robberies. *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121 at *5 (D. Utah Feb. 18, 2020), *aff'd*, 993 F.3d 821 (10th Cir. 2021) (defendant's youth at the time of arrest weighs in favor of compassionate release). He has now "served over 25 years in prison, more than half his life." *United States v. Jones*, 482 F. Supp. 3d at 979 (noting the 15 year disparity between the defendant's sentence and the sentence that would have likely been imposed today); *Maumau*, 2020 WL 806121 at *5 (reducing a 57-year sentence); *United States v. McPherson*, 454 F. Supp. 3d 1049, 1053 (W.D. Wash. 2020) (granting sentence reduction and release where defendant had served more than 26 years for "what is now probably a 17-year crime"); *United States v. Ngo*, No. 97-CR-3397-GPC, 2021 WL 778660, at *4 (S.D. Cal. Mar. 1, 2021) (a prison term 15 years longer than defendant would face if sentenced today constitutes an "extraordinary and compelling" reason for sentence reduction, particularly when combined with evidence of defendant's rehabilitation); *United States*

*v. Quinn*, 467 F. Supp. 3d 824, 828 (N.D. Cal. 2020) (finding that it would be unnecessarily cruel and unproductive for a defendant to remain in prison in the face of a 30-year disparity between his imposed sentence and the one that Congress would now deem sufficient for his conduct); *United States v. Sanchez*, No. 1:95-CR-05038-DAD, 2021 WL 2808702 (E.D. Cal. July 6, 2021) (reducing similarly-situated defendant's sentence to time served).

Both the sentencing judge and the Ninth Circuit expressed pointed concern not only about the practice of stacking § 924(c) sentences prior to the FSA, but about the unjust and unnecessarily lengthy punishment that Steward received in this particular case.[4] Considering all of these factors, the Court finds that Steward has met his burden of demonstrating extraordinary and compelling reasons warranting relief under § 3582(c)(1)(A).

**C.      Consistency With the § 3553(a) Factors**

As discussed above, "changes to § 924(c) can be one of any number of 'extraordinary and compelling reasons' to grant a motion for compassionate release, if a defendant's individual characteristics support that finding." *Smith*, 538 F. Supp. 3d at 1000. Thus, any relief granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a).[5] *See Parker*, 461 F. Supp. 3d at 979. Here, consideration of the § 3553(a) sentencing factors support Steward's release.

Steward is currently serving a 597-month sentence for interference with commerce by robbery and use of a firearm during a crime of violence. Steward's offenses were undoubtedly

---

[4] The fact that the court expressed concern at the time of sentencing has no bearing on whether it may now be grounds for a compassionate release. As the Sentencing Commission has noted, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.2.

[5] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

8

serious and sometimes violent. (Doc. 640 at 10.) The nearly three decades that Steward has served in prison reflects that seriousness, promotes respect for the law, and provides just punishment. The government's opposition to this conclusion is belied by the fact that it previously offered all co-defendants in this case plea deals that amounted to fewer than 25 years in prison, not accounting for good time credits. (*See* Doc. 632 at 12, plea deal offered to co-defendant Harris); *see United States v. Marks*, 455 F. Supp. 3d 17, 37 (W.D.N.Y. 2020), *appeal withdrawn*, No. 20-1404, 2021 WL 16884774 (2d Cir. Jan. 5, 2021). The co-defendants who accepted these plea deals, many of whom committed more robberies and exhibited more violent behavior than Steward during the course of their conduct, received markedly lower sentences than Steward. In fact, of seven co-defendants, the only two not released more than ten years ago were Steward and co-defendant Larry Harris, both of whom exercised their right to trial. This Court recently reduced Larry Harris's sentence to time-served for the same reasons that it grants Steward's motion. (Doc. 653.)

Furthermore, Steward has taken his incarceration seriously. He has admitted the error of his ways and concretely demonstrated a commitment to self-improvement even as he faced the majority of his life incarcerated. (*See* Doc. 632 at 8.) While in prison, Steward has earned a Bachelor of Science in Business Administration and pursued vocational training such as an intensive course in word processing and a 65-hour course in automated data processing. (Docs. 632 at 64–65; 632-16; 632-17.) He took a litany of self-help classes and completed 75 hours of structured study of the Old and New Testaments, an 11-session Bible study course, and the Quest Bible Answer Study offered by the Christian Soldiers Ministries. (Docs. 632 at 66; 632-18; 632-19; 632-20.) Steward also became licensed to preach in 2004 and has had a notable impact on community volunteers and inmates alike through his religious leadership. (Doc. 632 at 67.)

Additionally, Steward has been gainfully employed at all times possible during his incarceration. He began working with UNICOR[6] in 1996 and continued to do so until he was

---

[6] "UNICOR is the trade name for Federal Prison Industries (FPI): a wholly owned, self-sustaining Government corporation that sells market-priced services and quality goods made by inmates," and is "a vital correctional program that assists offenders in learning the skills necessary to successfully transition from convicted criminals to a law-abiding, contributing members of society. *UNICOR*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmates/custody_and_care/unicor.jsp (last visited May 20, 2022). Notably, it is a highly

1  transferred to an institution without UNICOR.  He was the head clerk of the Lompoc USP cable
2  factory, recycled computers at USP Atwater and DVDs/videos at USP McCreary and sewed
3  military shirts at FCI Butner.  Paid at most $1.15 an hour, Steward worked enough to completely
4  pay off the $9,370.85 he owed in restitution.  (*Id*. at 58.)

5  Steward also participated in the CODE program, the precursor to the intensive program
6  that came to be known as the Challenge program.  Kevin Mitchel, a treatment specialist at
7  Atwater who worked with Steward in the CODE program, describes Steward as "an outstanding
8  participant in the CODE program who . . . quickly became a leader for change in our treatment
9  community.  He completed the CODE program and received numerous certificates and awards in
10 the process."  (Doc. 632-18 at 4–5.)  Steward so impressed BOP staff in CODE that he was
11 personally recruited to participate in Challenge's inaugural class.  (Doc. 632 at 65.)

12 Mitchel became the Challenge Treatment Specialist for this program, which is a voluntary
13 500-hour drug abuse/mental health treatment program wherein "participants tend to be more
14 serious about recovery and truly be there for the purpose of change and growth rather than
15 incentives."  (Doc. 632-26 at ¶ 5.)  Steward was unable to complete the Challenge program after
16 being transferred to a facility that did not offer it, (Doc. 632-26 at ¶ 11), but Mitchel remembers
17 Steward more than ten years later as "one of the better participants that [Mitchel] oversaw in [his]
18 10 years with the CODE and Challenge Programs."  (Doc. 632-26 at ¶ 10.)

19 In addition to Mitchel's declaration, the Court has received several letters in support of
20 Steward's motion which detail Steward's mentorship, impact, and character throughout the last
21 27 years.  Jace Jensen, previously incarcerated, credits Steward with inspiring him to be a better
22 man and "always strive to change lives."  (Doc. 632-21.)  Christopher Parker, who was granted
23 compassionate release in 2021, wrote to detail Steward's brotherhood and mentorship while
24 Parker was incarcerated.  He states that his "behavior changed because of Michael [Steward]'s
25 advice, encouragement, and seeing his character."  According to Parker, Steward gave him
26 direction for his life by providing encouragement and perspective, "selfless in his dedication to

---

28  selective program; currently there are approximately 25,000 inmates who are waiting to work in UNICOR and only 8% of work-eligible inmates are permitted to participate in the program.

help those in need". (Doc. 642-1.) Steward's family members have also written in support, including Steward's mother, (Doc. 636-6); his daughter, (Doc. 636-25), with whom Steward connected and built a relationship during his incarceration; and his uncle, Gary Maddox. (Doc. 636-9).

The letters submitted on Steward's behalf demonstrate his commitment to leading a productive life post-release, which will be well supported by an engaged community. Dawn Franks, Founder of Stewards for Healthy Communities and Families, Inc., and the Destined Advocacy Project Alliance ("DAPA"), has known Steward since he was 16 years old. (Doc. 632-7 at 1.) Ms. Franks has become an advocate for Steward and others subject to § 924(c) stacked sentences through the DAPA non-profit. Ms. Franks informed the Court that she has identified a mentor for Steward upon his release who previously spent 33 years incarcerated and integrated successfully into the community upon his release. (*Id*. at 3.) This mentor, LV Thomas, is the CEO of On My Grind Re-entry Services and specializes in working with individualizes who have spent time in the justice system. Thomas confirmed his intent to mentor Steward and provide him with a community that understands the challenges of release from incarceration. (Doc. 632-24.)

Ms. Franks has also arranged mental health counseling and enrollment in the Volunteer of America Second Chance program, which provides mentorship post-release and services for case-management and transitional support. (Doc. 632-7 at 3.) Upon release, Steward will take a position working for Ms. Frank's second nonprofit, Stewards for Healthy Communities and Families, Inc. Steward will work in an administrative position until he acquires the computer proficiency to begin working for one of his uncle's businesses. (*Id*.; Doc. 632-9.)

While Steward's rehabilitation alone is not enough to warrant compassionate release, *see* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3, the Court is persuaded that Steward has made sincere and serious efforts in that regard. Steward's BOP disciplinary record confirms his rehabilitation: in nearly 30 years of incarceration at several facilities, Steward has received *no* violent disciplinary infractions. In fact, the only two infractions on Steward's entire record were for paying another inmate for stamps and for writing a letter to a released inmate that Steward had once mentored. (Doc. 632 at 59.) The government, notably, does not contest Steward's

11

exceptional disciplinary record; nor does it argue that Steward would be a danger to the community upon release. The government's sole argument against relief is that, despite having served more than 60% of his original statutory sentence, Steward should remain incarcerated. The Court disagrees. For the reasons discussed above, the Court finds that granting Steward's motion for compassionate release is consistent with the sentencing factors set forth in §3553(a).

## CONCLUSION

Accordingly:

1. Defendant Steward's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 632) is **GRANTED**.
2. Defendant Steward's sentence on all charges is reduced to **TIME SERVED**.
3. Defendant Steward shall be **RELEASED IMMEDIATELY** to begin the 36-month term of supervised release with the amended special and standard conditions as listed below.
4. All other aspects of defendant Steward's original sentence remain intact. (Doc. 256.)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall submit to the search of his person, property, home, and vehicle by a United Staharrtes probation officer, or any other authorized person under the immediate and personal supervision of the probation officer, based upon reasonable suspicion, without a search warrant. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition

2. The defendant shall not dispose of or otherwise dissipate any of his assets until the fine and/or restitution order by this Judgment is paid in full unless the defendant obtains approval of the Court or the probation officer.

3. The defendant shall apply all monies received from income tax refunds, lottery winnings, inheritance, judgments and any anticipated or unexpected financial gains to any unpaid restitution ordered by this Judgment.

4. The defendant shall provide the probation officer with access to any requested financial

information.

5. The defendant shall not open additional lines of credit without the approval of the probation officer.

6. As directed by the probation officer, the defendant shall participate in an outpatient correctional treatment program to obtain assistance for drug or alcohol abuse.

7. As directed by the probation officer, the defendant shall participate in a program of testing (i.e. breath, urine, sweat patch, etc.) to determine if he has reverted to the use of drugs or alcohol.

8. The defendant shall abstain from the use of alcoholic beverages and shall not enter, visit, or be present at those places where alcohol is the chief item of sale.

9. As directed by the probation officer, the defendant shall participate in a co-payment plan for treatment or testing and shall make payment directly to the vendor under contract with the United States Probation Office of up to $25 per month.

10. As directed by the probation officer, the defendant shall complete up to 20 hours of unpaid community service per week until employed for at least 30 hours per week or participating in a previously approved educational or vocational program.

11. The defendant shall make payments toward any unpaid criminal monetary penalty in this case during supervised release at the rate of at least 10% of your gross monthly income. Payments are to commence no later than 60 days from placement on supervision. This payment schedule does not prohibit the United States from collecting through all available means any unpaid criminal monetary penalty at any time, as prescribed by law.

**STANDARD CONDITIONS OF SUPERVISION**

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of release from imprisonment unless the probation officer instructs you to report to a different probation office or within a different time frame.

2. After initially reporting to the probation office, you will receive instructions from the Court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3. You must not knowingly leave the federal judicial district where you are authorized to

1 reside without first getting permission from the Court or the probation officer.

2 4. You must answer truthfully the questions asked by the probation officer.

3 5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8 6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

11 7. You must work full time (at least 30 hours per week) at a lawful type of employment unless the probation officer excuses you from doing so. If you do not have full-time employment, you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

19 8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

23 9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

25 10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person, such as nunchakus or tasers).

28 11. You must not act or make any agreement with a law enforcement agency to act as a

1  confidential human source or informant without first getting the permission of the Court.

2  12.     If the probation officer determines that you pose a risk to another person (including an
3  organization), the probation officer may require you to notify the person about the risk and you
4  must comply with that instruction.  The probation officer may contact the person and confirm that
5  you have notified the person about the risk.

6  13.     You must follow the instructions of the probation officer related to the conditions of
7  supervision.

IT IS SO ORDERED.

Dated:   **May 24, 2022**

UNITED STATES DISTRICT JUDGE